UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **Criminal No. 19-143 (SRC)** |
| v. | : | |
| | : | |
| TERRY M. BAKER, | : | OPINION |
| | : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion filed by Defendant Terry M. Baker ("Defendant" or "Baker") to suppress evidence of a firearm and to sever Counts One and Two of the Superseding Indictment from Count Three. The United States of America (the "Government") has opposed Baker's motion in its entirety. On December 10, 2019, the Court held an evidentiary hearing on the motion to suppress, during which it heard testimony from Newark Police Officer Anthony Resendes ("Officer Resendes"). Following the hearing, the Court provided an opportunity for supplemental briefs to be submitted. The Court has considered all papers filed in connection with the motion, as well as the evidence presented at the December 10 hearing. For the reasons set forth below, the Court will deny Defendant's motion to suppress. It will also deny the motion to sever the counts of the Superseding Indictment.

    I.      F<small>ACTUAL</small> B<small>ACKGROUND</small>

      The Superseding Indictment charges Baker with three counts: Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count One); Using and Carrying a Firearm During and in

1

Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two); and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three). The facts pertinent to the motion suppress are as follows:

On August 26, 2018, Officer Resendes was in uniform and on patrol in the city of Newark. While traveling southbound on Broadway in a marked police vehicle, Officer Resendes was flagged down at approximately 10:05 p.m., near the intersection of Broadway and Crane Street, by an individual the officer describes as "concerned citizen." The citizen told Officer Resendes that he had just observed a black male brandish a pink-colored handgun with a silver slide. The citizen said that the male was walking southbound on Broadway. The citizen further described the male he observed as black, bald, and wearing blue jeans and a blue jean jacket. At the time the citizen was reporting this information to Officer Resendes, the citizen also told the officer that he could still see the male who had brandished the handgun. At the hearing, Officer Resendes stated that during his encounter with the concerned citizen, he did not simultaneously observe the person described by the citizen, explaining that he could not see the person from his seated vantage point inside the police vehicle. Immediately after receiving the concerned citizen's tip, Officer Resendes proceeded south on Broadway in his police vehicle. In his testimony, Officer Resendes stated that he was driving slowly as he canvassed for the individual described to him. He testified that he saw only one person walking along Broadway in a southbound direction matching the description given by the concerned citizen.

Officer Resendes further testified that when he first observed the person matching the description, Officer Resendes was less than one block from the site of the interaction with the concerned citizen and the identified black male was at about one block from the site. On a map

admitted into evidence, Officer Resendes marked his location at this point in time as Broadway between Crane Street and 7th Avenue and the black male's location as the intersection of Broadway and 7th Avenue. Officer Resendes proceeded in his patrol car to follow the identified black male as he continued walking south along Broadway. At the intersection of Broadway and Clay Street, only two blocks from where Officer Resendes had been flagged down by the concerned citizen, Officer Resendes observed that the black male was approaching a New Jersey Transit bus.

At this location, Officer Resendes observed the male, that is, Defendant Baker, attempting to board the bus. Officer Resendes exited his police vehicle, ran toward Baker, and identified himself as a police officer. Officer Resendes testified that Baker ignored him and appeared to become nervous. He further testified that he then reached to grab Baker's arm and was pushed away. Officer Resendes detained Baker to conduct a pat-down search. At this time, additional police officers arrived at the scene. Footage from Officer Resendes's body camera shows that Baker was struggling with the officers trying to subdue and search him. In the process, a pink and silver handgun fell from Baker's pants onto the ground. The body camera footage shows a handgun matching this description on the ground next to a wheel of the bus, in the area where Baker was struggling with the officers. Baker was thereafter arrested.

## II.　MOTION TO SUPPRESS

The motion to suppress filed by Defendant turns on whether Officer Resendes lawfully conducted an investigatory stop of Baker, pursuant to the Fourth Amendment and the Supreme Court decision in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968) and its progeny. The Fourth Amended

3

guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. In <u>Terry</u>, the Supreme Court held that a police officer may conduct "a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot." <u>Terry</u>, 392 U.S. at 27; <u>see also</u> <u>Illinois v. Wardlaw</u>, 528 U.S. 119, 124 (2000) (recognizing the "well-established exception to the Fourth Amendment's warrant requirement" set forth in <u>Terry</u>). The Supreme Court has further held reasonable suspicion depends on whether an officer had "a particularized and objective basis for suspecting the person stopped of criminal activity." <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981). Courts must determine whether reasonable suspicion exists based on the totality of the circumstances. <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002). This approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." <u>Id.</u>

The Court has carefully considered the evidence presented in connection with this motion to suppress. In the Court's assessment, Officer Resendes credibly testified as to the events leading up to and during the investigatory stop of Defendant Baker. His testimony has established the facts pertinent to the subject stop and frisk. The Court finds that the Government has shown, by a preponderance of the evidence, that when Officer Resendes approached Baker as he was attempting to board the New Jersey Transit bus, Officer Resendes had reasonable, articulable suspicion that Baker was engaged in criminal activity and thus lawful conducted the investigatory stop.

Officer Resendes reasonably suspected Baker was in possession of a handgun based on the information provided to the officer in person by a concerned citizen only minutes before and two blocks away from the investigatory stop. Reasonable suspicion lawfully supporting a Terry stop can be based on a citizen's tip. Adams v. Williams, 407 U.S. 143, 147. The Third Circuit has identified several factors that my affect the reasonableness of the suspicion; they are: "(1) the nature of the tip or information; (2) the reliability of the informant; (3) the degree of corroboration; and (4) other facts contributing to suspicion or lack thereof." Copeland v. Phila. Police Dep't, 840 F.2d 1139, 1144 (3d Cir. 1988) (quotation omitted). The record demonstrates that, in this case, the information provided to Officer Resendes was specific, reliable, and corroborated by the officer himself. The concerned citizen provided Officer Resendes with a physical description of Baker's sex, race and clothing; specific information about the handgun he observed on Baker's person; and details regarding where the citizen saw Baker and the direction in which Baker was walking. The citizen provided this information to Officer Resendes contemporaneously with his observations, flagging the officer down to report what he had just seen and telling the officer that he could still see the man the citizen saw carrying a gun. The citizen spoke with Officer Resendes face-to-face, further indicative of the reliability of information provided by the citizen. Adams, 407 U.S. at 146-47. Moreover, in the Court's view, the reliability of the concerned citizen is bolstered by the details provided in the citizen's description of the handgun. Officer Resendes testified that the citizen described the weapon as pink with a silver slide; these specific and unique details increase the likelihood that the information being provided was based on the concerned citizen's actual observations. Adding to the reasonableness of Officer Resendes's suspicion, the officer corroborated the concerned

citizen's tip. Officer Resendes testified that, almost immediately after the officer's encounter with the concerned citizen and within one city block of where the citizen flagged down the patrol car, Officer Resendes observed a person walking southbound on Broadway and matching the physical description of the person seen carrying a pink gun. Indeed, Baker was the only person in the area who fit the description given by the concerned citizen, that is, a bald, black male wearing blue jeans and a blue denim jacket. Officer Resendes continued to observe and follow Baker to the corner of Broadway and Clay, where Baker attempted to board a bus. Officer Resendes decided to stop him, based on the report of possession a firearm in a high crime area and the other information provided by the concerned citizen.

While the body camera recording appears to show that Officer Resendes immediately grabbed Baker as the officer approached him, the unchallenged testimony offered by Officer Resendes at the evidentiary hearing states that the officer first verbally identified himself as a police officer. Officer Resendes testified that Baker ignored him, appeared nervous and continued to proceed attempting to board the bus. The officer, who was in uniform at all relevant times, also testified that it was only at this point that he grabbed Baker's arm to get his attention and prevent him from boarding the bus. He further testified that Baker pushed him away. According to Officer Resendes, Baker's behavior gave him further cause for suspicion of illegal activity, based on the officer's training and experience.

The Court finds that Baker's reaction to being approached by a police officer, together with the specificity and reliability of the concerned citizen's tip and the occurrence of these events in an area known by the officer for its drug activity all create sufficient reasonable suspicion to justify the <u>Terry</u> stop and frisk of Defendant Baker. Considering the totality of the

6

circumstances, Officer Resendes was justified in detaining Baker for an investigatory stop on the night of August 26, 2018 in the area of Broadway and Clay Street in Newark. The Court finds that he acted with objective, reasonable suspicion that Baker was in possession of a handgun and thus lawfully conducted a Terry stop "to investigate further the possibility of criminal involvement." United States v. Goodrich, 450 F.3d 552, 559 (3d Cir. 2006).

      The Court further finds that Officer Resendes and the other responding officers acted lawfully in restraining Baker for a pat-down search. The evidence shows that Baker was placed in handcuffs as the frisk of Baker's body was performed. In the course of that search, the pink handgun which is the subject of this motion to suppress fell out of Baker's clothing, or off of his person, and onto the ground. The officers' need to restrain Baker to perform the investigatory search was justified and does not alter the Court's conclusion that the weapon at issue in this motion to suppress was recovered in the course of a lawful investigatory stop. The restraint of a suspect does not necessarily convert an investigatory stop into an arrest. Florida v. Royer, 460 U.S. 491, 506 (1983) (observing that there is no "litmus-paper test . . . for determining when a seizure exceeds the bounds of an investigative stop."); Graham v. Connor, 490 U.S. 386, 396, (1989) ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); United States v. Tehrani, 49 F.3d 54, 62 (2d Cir. 1995) (finding that even though the suspect was not free to leave when taken by law enforcement to a small, private office for questioning, his investigatory detention did not cross the line into an arrest). Indeed, courts have recognized that physical restraints, including the use of handcuffs, may be justified in the course of an investigatory stop where officers must search for weapons or officer

safety is otherwise an issue. See, e.g., Muehler v. Mena, 544 U.S. 93 (2005) (holding that the detention of an individual in handcuffs while officers searched a suspected gang safe-house for weapons was not an arrest); United States v. Edwards, 761 F.3d 977, 981-82 (9th Cir. 2014) (holding that stop of individual suspected to be armed did not ripen into an arrest, despite the fact that the individual was placed in handcuffs and forced to kneel while officers performed a pat-down search, reasoning that the intrusive methods of the stopped was justified in light of the officers' safety concerns). As the Court has discussed, Baker was suspected of being armed with a handgun in a high crime area. Moreover, both Officer Resendes's testimony and the video from his body camera demonstrate that Baker struggled as Officer Resendes and other responding officers attempted to perform the pat-down search. The reasonable need to restrain Baker to effectuate the stop and frisk, as well as the legitimate concern with the safety of the officers and of the public, justified the use of handcuffs and physical restrain in the Terry stop. The nature and extent of the seizure of Baker during the investigatory stop do not transform the stop into an arrest.

In short, for the reasons discussed, Baker's Fourth Amendment rights were not violated by the investigatory stop and pat-down search of his person. The handgun recovered in the course of this lawful investigatory stop was not unlawfully seized and will not, therefore, be excluded from evidence. Defendant's motion to suppress will be denied.

### III.  MOTION TO SEVER

Defendant's motion to sever will also be denied. Although Federal Rule of Criminal Procedure 14(a) provides that a court may sever properly joined counts, a defendant seeking such

relief bears a "heavy burden in showing prejudice from joinder." United States v. Hudgins, 338 F. App'x 150, 153 (3d Cir. 2009). The defendant must demonstrate that joinder would result in a "manifestly unfair trial." Gov't of the V.I. v. Sanes, 57 F.3d 338, 341-42 (3d Cir. 1995). It is not enough for the defendant to show that he would have a greater chance of acquittal if the offenses were tried separately rather than together. Id. The Court finds that Defendant Baker has not made the requisite showing that he would face a manifestly unfair trial if his felon-in-possession offense (Count Three) remains joined to the two counts stemming from the alleged commission of a robbery using a firearm (Counts One and Two). As the Government has noted, a jury can be given a proper instruction to compartmentalize the evidence offered for the separate offenses, thus preventing any potential prejudice to Baker from the continued joinder of the charged offenses. Hudgins, 338 F. App'x at 153 ("for joinder to be proper, a jury must reasonably be expected to compartmentalize the evidence from the separate offenses."); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one . . ..").

**IV. CONCLUSION**

For the foregoing reasons, Defendant's pretrial motions to suppress evidence and to sever the indictment will be denied. The Court will file an appropriate Order.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: December 19, 2019